ATHENS BRICK & TILE CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12926, 19339. Promulgated January 17, 1929.

*G. D. Hunt, Esq., L. B. Smith, C. P. A.,* and *J. C. Harris, C. P. A.,*
for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

OPINION.

LOVE: The major question for decision in this case is the value of a deposit of clay at the time when it was paid in to the petitioner for stock in 1917. No questions of law are at issue. It is undisputed that the amount of the value is allowable for invested capital purposes, and also for the purpose of the computation of deductions from income by way of allowances for depletion of the deposit.

The value originally entered upon the books for the clay amounted to $5,350, and has been accepted by the respondent. It appears, however, that there were many influences at work at the time when the petitioner was organized and capitalized for the purpose of taking over a going business and of expanding it through the construction and operation of a larger plant. We are satisfied that the amount is not representative of the then actual value of the clay deposit, and we are convinced of this, even though an amount of stock was sold in a restricted circle for cash at par concurrently with the acquisition of the clay deposit for stock.

It is in evidence, and uncontroverted, that there was a ready market for the clay deposit at the beginning of 1917. The deposit was unusual in extent, of good quality, and favorably situated. A competitor temporarily disabled by the destruction by fire of its plant, and by reason of the exhaustion of its available clay reserve was negotiating for a purchase, and was anxious to acquire the property. We do not know what was the offer of this competitor at the beginning of 1917. At the latter part of 1917 the offer was for the entire capital stock of the petitioner on a basis of $250 per share. "Sometime in 1917," an offer of 25 cents per ton "for the clay" had been made.

We agree with the respondent that this evidence is too indefinite to be relied upon as fully supporting the contention of the petitioner. However, fire clay, in the ground, in this part of Texas, was certainly worth 5 cents per ton, for an experienced manufacturer of fire clay products paid that price for clay quarried from the lands of the poor farm, in Henderson County wherein was located the petitioner's deposit, and the agreement to do so was entered into just about the time of the transfer here under consideration. After abstraction this 5-cent clay was hauled by the purchaser a distance of a mile or so at an additional cost, for the haul, of 60 cents per ton. Obviously this question of expense of hauling enters into the value of a deposit, and the deposit of the petitioner, due to its favorable location very near to two railroads and to its own plant site was probably worth much more than 5 cents a ton. The purchaser of the clay from the poor farm testified, and gave his opinion of

the value of the clay deposit of the petitioner. Petitioner does not claim the full amount of this value, proposing to discount it over the probable life of the deposit, using a mathematical formula. Upon a careful consideration of the record upon which this case must be decided we feel that the petitioner has sustained the burden of proof laid upon it. With no satisfactory evidence to show that the contention of the petitioner is not correct, we conclude that the value claimed, amounting to $117,477.80, should be allowed for purposes of invested capital and for the computation of the deductions for depletion.

The petitioner further contends that in the computation of the number of tons of clay extracted in each of the taxable years, recognition should be given to the fact that there is a loss of weight of the clay incident to the burning, consequently the amount of depletion charged off on the books and claimed in the returns does not measure the amount of clay extracted. The original records of the petitioner from 1919 to 1926, inclusive, are in evidence in the form of monthly vouchers prepared by Williams, who is now dead, charging off costs of manufacture and allowances for depletion. Williams was a practical and experienced manufacturer of clay products, probably well acquainted with the loss in weight of the clay. Some of the vouchers bear signs of probable consideration by the maker of them, of the loss in weight of the clay. Depletion should be based on the value herein determined, and on the clay, rather than the finished product tonnage.

*Decision will be entered under Rule 50.*